United States District Court
Southern District of Texas
**ENTERED**
May 16, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ORLANDO  REYES, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-454 |
| | § | |
| WILLIAM  STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Orlando Reyes is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Stiles Unit in Beaumont, Texas.  The actions about which he complains occurred in Nueces County, Texas.  Petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on October 27, 2015.[1]  The underlying conviction which is the subject of the petition is a 2012 Nueces County conviction for indecency with a child, enhanced to a second degree felony by prior convictions.  Petitioner claims that his constitutional rights were violated during the trial and appellate proceedings.  Respondent filed a motion for summary judgment on February 10, 2016 to which Petitioner responded on March 29,

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on October 27, 2015 and it is considered filed as of that date.  *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

2016 (D.E. 24, 27).  For the reasons set forth below, it is recommended that Respondent's motion for summary judgment be granted and Petitioner's application for habeas corpus relief be denied.  It is further recommended that any request for a Certificate of Appealability be denied.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331.  Petitioner was convicted in Nueces County, Texas.  28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

On August 19, 2011 Petitioner was indicted on two counts of aggravated sexual assault of a child and of being an habitual felony offender.  He was re-indicted on one count of aggravated sexual assault of a child and two counts of indecency with a child, also enhanced by being an habitual felony offender.  *Ex Parte Reyes*, WR-83,186-01 at 121-124 (D.E. 19-22 at pp. 48-51).  At trial, the State dismissed two counts and proceeded on one count of aggravated sexual assault with a lesser included offense of indecency with a child along with the enhancements (4 RR 29-31; D.E. 19-11 at p. 11).  Petitioner was tried in front of a jury in the 347th District Court of Nueces County, Texas.

At the trial, a sexual assault nurse examiner (SANE) testified that the victim, D.S., who was four years old at the time, told her that "Diana's boyfriend" touched D.S. "with him (sic) hand more than once.  It hurts."  D.S. pointed to her vaginal area as she described what happened (3 RR 62; D.E. 19-10 at p. 19).  The nurse checked D.S.'s urine for irregularities but the laboratory results were normal (3 RR 62-63; D.E. 19-10 at p.

19).  The nurse noted no trauma to D.S.'s genitalia when she examined her and stated that lack of trauma in a sexual assault case of this nature was not unusual (3 RR 67-68; D.E. 19-10 at p. 20).

D.S. was five years old when she testified at trial.  However when she started to testify, she said she was seven years old (3 RR 91; D.E. 19-10 at p. 26).  When the prosecutor asked her who touched her, she replied three times that "Guero" had touched her (3 RR 96; D.E. 19-10 at p. 27).  "Guero" was the nickname of Adam Rivera, another man associated with the family, and not Petitioner (3 RR 169-170; D.E. 19-10 at p. 46). Upon further questioning, D.S. testified that Petitioner was her grandmother Dora's boyfriend[2] and that he had touched her in her "middle."  She said he had touched her only one time (3 RR 97-100; D.E. 19-10 at p. 28).  Upon questioning by the defense attorney, D.S. said repeatedly that "Guero" had been the one to touch her (3 RR 104-105; D.E. 19-10 at p. 30).  When asked if she saw Petitioner, identified by his first name, Orlando, in the courtroom, D.S. said she did not.  She stated that Orlando was her great-aunt Diana's boyfriend (3 RR 108-109; D.E. 19-10 at 30-31).   In response to questions by the prosecutor, "Who is Guero? Is that Orlando?", D.S. replied, "Uh-huh." (3 RR 109; D.E. 19-10 at p. 31).

D.S.'s paternal aunt, Monica Soliz, testified that she was babysitting D.S. when D.S. told Soliz that her middle hurt because "Diana's boyfriend" touched D.S. there.  D.S. grabbed her vaginal area while she was talking.  D.S. also told Soliz that she told him to

---

[2] Petitioner actually was the boyfriend of Diana, D.S.'s maternal great aunt and Dora's twin (3 RR 185-186; D.E. 19-10 at p. 50).

stop.  In addition, D.S. told Soliz that D.S. had told D.S.'s mother and Diana what had happened and they had asked D.S. why she "let him touch [her] down there."  (3 RR 162-164; D.E. 19-10 at p. 162).  Initially D.S. told Soliz only that "a man" had touched her, but when asked, "What man?" D.S. responded "Diana's boyfriend." (3 RR 176-177; D.E. 19-10 at pp. 47-48).

Soliz's brother is nicknamed "Guero" and D.S. knew him as "Guero" (3 RR 170; D.E. 19-10 at p. 46).  Soliz also testified that Petitioner and Diana lived in the same house as D.S. for a while (3 RR 165; D.E. 19-10 at p. 45).

D.S.'s mother, Carmen Rodriguez, testified that her aunt and Petitioner moved in with Rodriguez and her children sometime around March 2011 (3 RR 186; D.E. 19-10 at p. 50).  Rodriguez and her children moved out of the house in June or July 2011 and Petitioner and the aunt stayed at the house (3 RR 190; D.E. 19-10 at p. 51).  The first time Rodriguez heard that D.S. had been inappropriately touched was when Rodriguez's mother-in-law, Monica Soliz's mother, called Rodriguez and told her (3 RR 191-192; D.E. 19-10 at p. 51).

The State called Adam Rivera's probation officer who stated that Rivera ("Guero") was placed on probation on June 24, 2010.  On March 25, 2011 he was taken into custody at the Nueces County jail on a motion to revoke probation (4 RR 12-14; D.E. 19-11 at pp. 6-7).  He was ordered to treatment at a Substance Abuse Felony Punishment Facility (SAFPF) but remained at the Nueces County jail until July 19, 2011 when he was transferred to the SAFPF.  He remained at the SAFPF, a lock-down facility, until April 16, 2012 (4 RR 14-16; D.E. 19-11 at p. 7).

The jury watched an interview with D.S. conducted at the Children's Advocacy Center (3 RR 126-127; D.E. 19-10 at p. 35).   The jury also watched an interview conducted with Petitioner after he was arrested (3 RR 27; D.E. 19-10 at p. 10).

The jury found Petitioner guilty of the lesser included offense of indecency with a child enhanced by prior convictions and on June 20, 2012 the Court sentenced him to a fifty-year term in TDCJ-CID.   *Ex Parte Reyes*, WR-83,186-01 at 99-101 (D.E. 19-22 at pp. 26-28).   Petitioner filed a direct appeal and the Thirteenth Court of Appeals affirmed his conviction on December 5, 2013.   *Reyes v. State*, No. 13-12-00468-CR, 2013 WL 8609783 (Tex. App. --Corpus Christi 2013, pet. ref'd)(not designated for publication) (located herein at D.E. 19-7).   Petitioner sought a petition for discretionary review from the Texas Court of Criminal Appeals and it was refused on June 11, 2014.   *Reyes v. State*, PD-405-14 (Tex. Crim. App. 2014)(located herein at D.E. 19-17).

Petitioner filed an application for habeas corpus review in state court on March 20, 2015.   *Ex Parte Reyes*, WR-83,186-01 at 2-73 (D.E. 19-21 at pp. 5-76).   The State filed an answer and on April 15, 2015 the trial court entered findings of fact and conclusions of law, recommending that habeas relief be denied.   *Id.* at 117-120 (D.E. 19-22 at pp. 44-47).   The Texas Court of Criminal appeals denied habeas relief without written order on the findings of the trial court without a hearing.   *Id.* at "Action Taken" page (D.E. 19-19).

Petitioner filed this federal petition on October 27, 2015, and makes the following arguments:

(1) The evidence is legally insufficient to support Petitioner's conviction beyond a reasonable doubt;

(2) His trial counsel was ineffective when he
(a) failed to subpoena or investigate witnesses whose reports included exculpatory evidence;
(b) failed to object to prejudicial extraneous offense evidence;
(c) failed to object to trial court's improper verdict form;
(d) failed to object to illegal sentencing by the trial court; and
(e) failed to file any pre-trial motions;

(3) His appellate counsel was ineffective when he
(a) failed to raise the issue of the State withholding exculpatory evidence;
(b) failed to raise the issue of the trial court illegally enhancing Petitioner's sentence;
(c) failed to make a reasonable investigation of the law and facts concerning Petitioner's case;

(4) the State failed to produce exculpatory evidence;

(5) the trial court illegally sentenced Petitioner to fifty years although it failed to find the enhancement allegations true;

(6) the trial court failed to include a not guilty option on the verdict form for the lesser included offense; and

(7) the trial court allowed the use of extremely prejudicial extraneous offense evidence.

Respondent, in his motion for summary judgment, argues that Petitioner's claims are conclusory, meritless and that he cannot show that he is entitled to relief under the standard set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Respondent concedes that the petition is timely and that the issues raised are exhausted. In his response to the motion for summary judgment, Petitioner reiterates that he is entitled to the relief he seeks.

## APPLICABLE LAW

**A.  Standard of Review**

Under the AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision. Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *Harrington*, 562 U.S. at 102.  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther."  *Id.* at 102.  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision.  *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).  A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the

presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## B.  Insufficient Evidence

When reviewing an application for habeas corpus relief based on a claim of insufficient evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner asserts that the evidence was insufficient to find him guilty of indecency with a child because in court D.S. consistently named "Guero" as the person who touched her and "Guero" is the nickname of Adam Rivera and not Petitioner. In addition, D.S. denied seeing Petitioner, identified as Orlando, in the courtroom. Petitioner also points out that "Guero" is the brother of the outcry witness, Monica Soliz, which he contends gave her a motive to lie about what D.S. told her. Petitioner also argues that because the evidence did not establish a particular time or place for the offense to have occurred that Rivera was not ruled out as the perpetrator.

The Thirteenth Court of Appeals addressed the substantial evidence issue, first noting that a child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. *Reyes*, 2013 WL 8609763 at *2 (D.E. 19-7 at p. 5). The

court also noted that the probation officer testified that Rivera or "Guero" had been incarcerated since March 25, 2011, more than three months before D.S. made her outcry statement. *Id*. at \*3. The court concluded that the jury, as the exclusive judge of a witness's credibility, could have concluded that Petitioner touched D.S. based on the entirety of her testimony, the content of her outcry report and the evidence that Rivera was confined in the months prior to D.S.'s outcry. *Id*.

Petitioner has not shown that this determination is contrary to or an unreasonable application of federal law as determined by the Supreme Court. Petitioner cites *United States v. Wade*, 388 U.S. 218 (1967), which held that absent waiver, an accused is entitled to counsel at a post-indictment lineup when identification is an issue. However, this case does not involve a witness identifying an accused at a line-up so *Wade* is not applicable.

Petitioner also argues that the State relied on false testimony by the SANE nurse that D.S.'s urine did not indicate that she had a bladder infection. Petitioner asserts that other medical records showed that D.S. complained of and was treated for dysuria and that a bladder infection could have explained the pain about which she complained. Petitioner submitted a medical record showing that on the same day Petitioner was seen by the SANE nurse, she also saw a pediatrician who noted that she was complaining of dysuria.

"Dysuria" is discomfort or burning with urination and can be a symptom of several things, including a bladder infection.[3]   However, a bladder infection was ruled out by laboratory tests.  Petitioner seems to argue that the report that D.S. had dysuria means that the pain she complained about was caused by a bladder infection and not by any type of touching.  However "dysuria" is a symptom and not a diagnosis and the fact that D.S. complained of dysuria at the hospital is not inconsistent with the jury's conclusion that Petitioner touched D.S.'s vaginal area.

Petitioner has not shown that the appellate court's conclusion that his conviction is supported by substantial evidence is unreasonable or contrary to federal law under the stringent AEDPA standard.  Accordingly, it is recommended that judgment be entered for Respondent on this issue.

## C.  Ineffective Assistance of Trial Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.*, 466 U.S. at 687-88, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice" in a noncapital context.  *Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

---

[3] http://www.emedicinehealth.com/dysuria/article_em.htm (last viewed May 11, 2016).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690.

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 695.

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

*Harrington*, 562 U.S. at 105. In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under §

2254(d).  "When § 2254 (d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The state habeas court found that Petitioner's trial counsel rendered effective assistance.  Each of Petitioner's contentions of ineffective assistance will be examined in turn.

### (1) Failure To Subpoena or Investigate Witnesses Whose Reports Included Exculpatory Evidence

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.  Where the only evidence of a missing witness's testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001)(citations omitted).  In order to show prejudice under *Strickland*, a movant must show not only that the testimony would have been favorable, but also that the witnesses would have testified at trial.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Petitioner asserts that his attorney was ineffective because he failed to call two witnesses:  the doctor who noted that D.S. complained of dysuria and a social worker who interviewed D.S. and some of her family members.  Petitioner claims that the doctor would have rebutted the testimony of the SANE nurse that D.S.'s pain was not caused by a bladder infection, but as discussed above, the two findings are not mutually exclusive. The complaint of dysuria did not necessarily mean that D.S. had a bladder infection

because any pain or discomfort related to urination could have been caused by being touched in her vaginal area.  Thus, the doctor's testimony would not have been favorable because he would have been unable to rebut the finding that D.S. did not have a bladder infection.

Petitioner submitted a document he asserts was prepared by a social worker who interviewed D.S. and her relatives in the emergency room and that the social worker recorded that they told her the "Mother's sister's 24-year-old boy friend (sic) used fingers to touch her private."  (D.E. 7-1 at p. 10).  Petitioner claims that this identification ruled him out as the perpetrator because he was more than thirty years old and was known to D.S. as her grandmother's boyfriend.

Petitioner asserts that his attorney should have called the social worker to testify, but Petitioner has not shown that the social worker was available to testify at the trial.  In addition, even if the social worker had been available to testify, and even if her testimony were favorable, Petitioner cannot show prejudice under the *Strickland* standard.  The jury heard evidence at trial that D.S. was confused about the identities of Petitioner and "Guero" but also heard that "Guero" was incarcerated in the three months prior to the outcry.  Under these circumstances, Petitioner cannot show that there is a reasonable probability that the result of the proceedings would have been different had the jury heard the testimony of the social worker.

**(2) Failure to File Pretrial Motion Objecting to Prejudicial Extraneous Offense Evidence and Failure to Object During Trial**

Petitioner argues that his attorney was ineffective because he did not object to the State entering into evidence the videotaped interrogation of Petitioner made while he was at the police station.  Petitioner also claims that the jury should not have been allowed to see him handcuffed and being badgered by the detective with "inflammatory and clearly accusatory" questions on the videotape.  The state habeas court found that the videotape was evidence from Petitioner's case and not extraneous and that any objection to its admission into evidence would have failed.

Petitioner does not dispute that he was in custody at the time he gave the statement or that he received the warnings set forth in *Miranda v. Arizona*, 348 U.S. 436 (1966), and voluntarily waived his right to remain silent.  Thus, the videotaped interrogation was admissible under the Texas Rules of Evidence and Texas Code of Criminal Procedure, Art. 38.22 § 3.  Had his attorney moved to suppress the videotape, the motion would have been denied.  Petitioner cannot make out an ineffective assistance of counsel claim on these facts.

Petitioner also argues that allowing the jury to see him handcuffed and in jail clothes during the interrogation destroyed the presumption of innocence, citing *Estelle v. Williams*, 425 U.S. 501 (1971).  In *Estelle*, the Supreme Court held that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment to the presumption of innocence.  *Id.* at 504.  However, Petitioner has pointed to no Supreme Court case where that rule has been extended to pretrial videotaped

interrogations and none was found.  Texas courts have allowed such videotapes to be presented at trial.  *See Erickson v. State*, No. 06-07-00065-CR, 2008 WL 398434 at *4-5 (Tex. App.—Texarkana 2008 pet. ref'd)(not designated for publication)(hour-long videotape of defendant in jail garb did not approximate being compelled to wear jail clothes in the jury's presence for entirety of four-day trial, especially where trial court admonished jury that it should not let clothing provide an inference of guilt); *Martinez v. State*, No. 13-06-179-CR, 2007 WL 2199631 at *7 (Tex. App.—Corpus Christi 2007, no pet.)(not designated for publication)(attorney not ineffective for failing to object to videotape showing defendant in jail clothing) and *Hutchinson v. State*, No. 01-98-01259-CR, 1999 WL 977836 at *1 (Tex. App. –Houston [1st Dist.] 1999, pet. ref'd)(not designated for publication)(no error when jury allowed to see videotape of defendant in jail clothes during a lineup).

Petitioner cannot show that his attorney was ineffective for failing to object to the introduction of the videotape because the objection most likely would have been overruled.  Accordingly, Respondent is entitled to judgment on this issue.

**(3)  Failure to Object to Improper Verdict Form**

The jury charge agreed on by the parties did not contain a "not guilty" verdict form related to the lesser included offense of indecency with a child.  Petitioner's attorney did not object to the form as submitted although he was given an opportunity to do so.  When the jury returned with a verdict, the presiding juror had signed two verdict forms--one finding Petitioner not guilty of aggravated sexual assault and one finding him guilty of indecency with a child.  Petitioner's counsel moved for mistrial on the grounds that the

verdict forms were improper for failing to include an option to find Petitioner "not guilty" on the indecency charge and the court denied the motion.

The Thirteenth Court of Appeals found that it was error for the verdict form to not have included a "not guilty" option for the indecency charge, but because Petitioner's counsel had not objected to the omission, the court analyzed the error under the "egregious harm" standard. *Reyes*, 2013 WL 860973 at *4-5. A jury-charge error amounts to egregious harm when it affects the very basis of the case and deprives the defendant of a valuable right or vitally affects a defensive theory. *Id*. at *5. The appellate court reviewed the entire jury charge, the state of the evidence, the argument of counsel and the fact that when the error was discovered, the trial court issued additional instructions and later polled the jury to confirm that the verdict reflected each juror's intent. The court concluded that the omission did not cause Petitioner egregious harm *Id*. at *5-6.

Petitioner is correct that his attorney erred when he did not object to the jury charge. However, Petitioner cannot show prejudice under the *Strickland* standard because he cannot show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Given the jurors' responses when they were polled, there does not exist a reasonable probability that the jurors would have found Petitioner "not guilty" of indecency with a child if they had been given an opportunity to do so. Had counsel objected, the most likely outcome is that the jury form would have been revised to include a "not guilty" option for the

indecency charge but that the jury would have found him guilty anyway.   Judgment should be entered for Respondent on this issue.

### (4) Failure to Object to Illegal Sentencing

Petitioner argues that his sentence was illegal because the written judgment does not indicate that the court found the enhancement paragraphs on his indictment to be true and that his attorney should have objected to it.   Petitioner is correct that neither the original judgment nor a *nunc pro tunc* judgment entered on July 12, 2012 indicates that the enhancement paragraphs were true.   *Ex Parte Reyes*, WR-83,186-01 at 99-101(D.E. 19-22 at pp. 26-28).   Nevertheless, because the trial court announced on the record that the enhancements were true, the state habeas court found that Petitioner's sentence was legal.   *Id*. at 117 (D.E. 19-22 at p. 44).

Under Texas law, a written judgment is simply the declaration and embodiment of the oral pronouncement at sentencing and when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls.   *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014).   When Petitioner was sentenced, the court announced on the record that it found that the two previous convictions were true (5 RR 63; D.E. 19-12 at p. 63).   Therefore, notwithstanding the omission of the finding from the written judgment, the sentence was enhanced in accordance with the law.   Petitioner cannot show that the state habeas court's finding was unreasonable under the AEDPA standard and Respondent is entitled to judgment on this issue.

### D.  Ineffective Assistance of Appellate Counsel

Claims of ineffective assistance of appellate counsel are reviewed under the *Strickland* standard.  *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).  A petitioner must first show that his appellate counsel's conduct fell below an objective standard of reasonableness.  To show prejudice, a petitioner must show the reasonable probability that, but for unprofessional errors, the result of the proceeding would have been different.  *Id.*

Petitioner argues that his appellate attorney was ineffective because he failed to raise the issue that the State withheld exculpatory evidence and failed to argue that his sentence was illegal.  Petitioner claims that if his attorney had adequately investigated the law and facts he would have known to make both arguments.  The exculpatory evidence that Petitioner claims was withheld was the evidence that D.S. complained of dysuria when she was examined at the hospital.  As discussed above, the fact that D.S. complained of pain and discomfort with urination was not inconsistent with a finding that she had been touched in her vaginal area.  Therefore, Petitioner cannot show that if his attorney had raised this issue on appeal that the result of the proceeding would have been different.

Petitioner also complains that his appellate attorney should have argued on appeal that the trial court illegally enhanced Petitioner's sentence.  However, as discussed above, the fact that the written judgment does not contain a finding of true on the enhancement paragraphs does not mean that his sentence was illegal because the court made the

finding on the record at the hearing.  Had this issue been raised on appeal it would not have affected the outcome of the decision.

### E.  Remaining Claims

Petitioner's remaining arguments--that the State failed to produce exculpatory evidence regarding D.S.'s complaints of dysuria; the trial court illegally sentenced Petitioner to fifty years when it failed to find the enhancement allegations true; the trial court failed to include a not guilty option on the verdict form for the lesser included offense; and the trial court allowed the use of extremely prejudicial extraneous offense evidence--all were addressed above as part of Petitioner's insufficient evidence and ineffective assistance of counsel claims.  Petitioner has cited no Supreme Court law to show that the state court findings were unreasonable or contrary to precedent on these claims.  Thus, it is recommended judgment be entered for Respondent on these issues.

### F.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.")

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed or denied on procedural grounds.  In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his claims be denied on the merits.  Reasonable jurists would not find the assessment of the constitutional claims debatable or wrong.  If the district court orders that Petitioner's habeas petition be denied and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 24) be GRANTED and Petitioner's application for habeas corpus relief be DENIED.  It is further recommended that a Certificate of Appealability be DENIED.

Respectfully submitted this 16th day of May, 2016.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).